O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISETTE CRYSTAL VASQUEZ,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. EDCV 11-883-OP<br><br>MEMORANDUM OPINION; ORDER |

　　The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

---

　　[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See ECF Nos. 9, 10.)

　　[2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

1

# I.

# DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") fully informed this retarded Plaintiff of her right to representation and obtained an informed waiver of that right; and

(2) Whether the ALJ properly considered the relevant evidence of record pertaining to Listing 12.05C.

(JS at 3.)

# II.

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

## III.

## **DISCUSSION**

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of mental retardation, post-traumatic orthopedic changes of the hip, and hip dysplasia.[3] (Administrative Record ("AR") at 10.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of medium work with the following additional comments/limitations: lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently; standing and/or walking four hours in an eight-hour day with normal breaks; sitting without limitation with normal breaks such as every two hours; bending, kneeling, stooping, crawling, and crouching on an occasional basis; walking on uneven terrain, climbing ladders, and working at heights on an occasional basis; can perform overhead activities and has full use of her hands for fine and gross manipulative movements; and limited to simple, repetitive tasks. (Id. at 12.)

Relying on the testimony of the vocational expert ("VE") to determine the extent to which Plaintiff's limitations eroded the unskilled medium occupational base, the ALJ asked the VE whether, in light of Plaintiff's age, education, work experience, and RFC, she would be able to perform any jobs existing in the national economy. (Id. at 19-20, 45-48.) Based on the testimony of the VE, the ALJ determined Plaintiff could perform a variety of unskilled SVP level 2 jobs, which existed in significant numbers in the regional and national economy. (Id. at 14.)

/ / /

---

[3]  With respect to Plaintiff's asthma, the ALJ indicated that the record did not support asthma as a severe impairment because "[Plaintiff] does not regularly use medication for it," and pulmonary function tests indicated normal spirometry without inhalers. (AR at 10, 12.) Substantial evidence supports this finding.

3

B.  **Plaintiff Suffered No Prejudice from Her Waiver of Counsel.**

    1.  **Background.**

Plaintiff previously received SSI benefits as a child due to her mental retardation.[4] (JS at 4.) Eligibility benefits were redetermined under the rules for determining disability in adults when Plaintiff attained age 18, and it was determined that Plaintiff was no longer disabled as of March 13, 2009. (AR at 8.) Plaintiff appealed and on May 4, 2010, a hearing was held before the ALJ. (Id.) Plaintiff and her mother appeared and testified at the hearing. (Id.)

Plaintiff contends that the ALJ failed to provide a satisfactory explanation to Plaintiff as to how a representative might be able to assist in the proper development of the record. (JS at 4.) She also complains that the ALJ failed to give Plaintiff or her mother any opportunity to "address the vocational expert's testimony or cross-examine the vocational expert in any way." (Id. at 7.)

    2.  **Waiver.**

While not indicative of a lack of prejudice or unfairness, it is notable that Plaintiff received several separate notices prior to the hearing informing her of her right to counsel. (AR at 53, 69-74, 75-81.) At the outset of the hearing, the ALJ also engaged in the following dialogue with Plaintiff:

    ALJ: As a judge, it's my responsibility to see that you have a full

---

[4] Defendant contends there is no evidence in the record that Plaintiff's childhood SSI benefits were based on Plaintiff's mental retardation. (JS at 14.) However, on October 27, 2009, a disability hearing officer reported that Plaintiff had been "under a disability previously due to mental retardation based on the childhood disability guidelines." (AR at 57.) The Court notes that the record also reflects that in 1999, the school district provided Plaintiff special education services as a "child with mental retardation" (see, e.g., AR at 168, 170, 173, 189) although her most recent 2008 Individualized Education Program stated that her "primary disability" was a "Specific Learning Disability," not Mental Retardation (id. at 155). There are no documents reflecting the school district's reason for this change. (See id. at 153-70.)

and fair hearing today, so I want to talk to you about some important rights you have. One of the most important rights is the right to representation. There's no requirement that you be represented, but you have the right to be represented, if you can find somebody to do so. Reviewing our file, I see that you were sent written notices stating your right to representation, but I see you are here without representation, so I assume you want to proceed without representation?

CLMT: Yes.

(Id. at 25.)

Preliminarily, an ALJ's disclosure requirements are governed by the statutory standard of 42 U.S.C. § 406(c), not the decisions from the Fifth or Seventh Circuit relied on by Plaintiff, which "have never been adopted by this Court." Roberts v. Comm'r of the Soc. Sec. Admin., 644 F.3d 931, 933-34 (9th Cir. 2011) (holding that "no disclosure is required, other than the disclosure required by § 406(c)" and rejecting the "enhanced disclosure requirements" adopted by the Fifth, Seventh, and Eleventh Circuits). Under § 406(c), the Commissioner is required to "notify each claimant in writing . . . of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner. . . ." This notification must "also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c); see also 20 C.F.R. § 404.1706. These disclosure requirements were met in this case.

Moreover, from the Court's review of the record, there is nothing improper about Plaintiff's waiver of counsel. The written notices, along with the ALJ's verbal notice at the outset of the hearing, sufficiently informed Plaintiff about her right to counsel and her right to ask questions of any witnesses. (AR at 78.) Thus, Plaintiff knowingly and intelligently waived her right to counsel at the hearing. See e.g., Perez v. Astrue, CV 07-06726-MAN, 2009 WL 3170041, at *4 (C.D. Cal.

Sept. 29, 2009) (finding plaintiff's waiver to be deficient where there was no dialogue on record between the ALJ and plaintiff indicating whether plaintiff understood her right to representation and her informed waiver of that representation); Polk v. Astrue, EDCV 09-615-OP, 2010 WL 148203 (C.D. Cal. 2010) (written and verbal notices sufficiently informed Plaintiff of right to representation).

**2. Prejudice.**

Although a plaintiff has the right to be represented by counsel at an administrative hearing before an ALJ, the "[l]ack of counsel does not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings." Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (citing Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981)). Although, as discussed below, the ALJ's decision is not free of legal error, Plaintiff has not demonstrated prejudice or unfairness in the administrative proceeding itself.[5]

**C. Whether the ALJ Properly Developed the Record.**

**1. Background.**

Plaintiff contends that the ALJ failed to provide any explanation as to the fact that although Plaintiff received Supplemental Security Income ("SSI") throughout her childhood, after her eighteenth birthday she was no longer disabled. (JS at 9.) She contends that she was disabled under the childhood listings for mental retardation and "certainly continues to be disabled under the same listings applicable for adults." (Id.) Plaintiff also contends that the ALJ failed to consider the opinions of State agency reviewing physician J. Ross, M.D.,

---

[5] Although neither Plaintiff or her mother were given an explicit opportunity to "comment on the [VE] testimony or ask any questions," neither did the ALJ prevent them from commenting or asking questions of the VE. (AR at 44-47.) The ALJ did offer Plaintiff additional time after the hearing to review a set of conditionally admitted records (id. at 27) and left the record open for additional submissions for two weeks (id. at 41-42).

who found her restricted to light work and assessed other environmental limitations. (Id. at 13-14 (citing AR at 229-34.)  She argues that she qualifies for Social Security Disability benefits because she meets the requirements of Listing 12.05C, given her IQ scores, in combination with her severely arthritic hip. (Id. at 9-10 (citing AR at 194, 220-24).)

### 2. Duty to Develop the Record.

While an ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, that duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect his or her own interests. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also Tonapetyan v. Halter, 242 F.3d, 1144, 1150 (9th Cir. 2001); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).  When a claimant appears at a hearing without counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.  He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Key, 754 F.2d at 1551 (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

### 3. Listing 12.05C.

Preliminarily, the fact that Plaintiff received SSI benefits as a child has no bearing on her application for benefits as an adult.  The regulations provide that individuals who are eligible for SSI benefits as children "must have their disability redetermined under the rules for disability used for adults." 20 C.F.R. § 416.924 (explaining the three-step childhood disability assessment process); id. § 416.920 (explaining the five-step adult disability assessment process).

#### a. First Prong of Listing 12.05C.

Plaintiff contends that she is disabled because she meets the requirements of Listing 12.05C. Unlike other mental listings, Listing 12.05 does not require the Commissioner to assess the severity of the claimant's impairment according to the functional limitations imposed by the impairment, including daily activities, social

functioning, and concentration, persistence, and pace. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05. According to Listing 12.05, a claimant's impairment will meet that listing if it satisfies any of the given criteria of the listing. Id. In the case of Listing 12.05C, the following criteria are required to support a disability finding: (1) that a claimant have a valid IQ of 60 to 70 inclusive, and (2) that the claimant have an additional significant physical or mental functional limitation. Id. § 12.05C. Listing 12.05 itself "does not require a diagnosis or finding of 'mental retardation,' but relies instead on valid IQs in conjunction with other evidence to establish 'subaverage general intellectual functioning.'" Gomez v. Astrue, 695 F. Supp. 2d 1049, 1057-58 (C.D. Cal. 2010) (citing Soc. Sec. Ruling 83-19). The first prong of the listing, the IQ, is only met when the ALJ determines that the test results are valid. 20 C.F.R. pt. 404, subpt. P, App. 1.

### b. Second Prong of Listing 12.05C

To satisfy the second prong of Listing 12.05C, the claimant must have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05; see Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) ("[T]he purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work.") (quoting Sird v. Chater, 105 F.3d 401, 403 n.6 (8th Cir. 1997)). Following several other circuit courts, the Ninth Circuit has held that "an impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987) (citing Pullen v. Bowen, 820 F.2d 105, 109 (4th Cir. 1987); Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986); Nieves v. Sec'y of Health & Human Servs., 775 F.2d 12, 14 (1st Cir. 1985); Edwards by Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir.1985)). The Ninth Circuit "emphasize[d] . . . that a finding of severity is not

required to satisfy the more than slight or minimal effect standard.'"[6] Fanning, 827 F.2d at 633 n.3 (citing Edwards, 755 F.2d at 1515) (stating that a "significant" work-related limitation of function involves something more than "minimal" but less than "severe"). Thus, if the claimant has an additional physical or mental impairment "which was itself severe," that impairment "automatically satisfie[s] the more than slight or minimal effect standard." Id. (citing Nieves, 775 F.2d at 14).

After Fanning was decided, the Commissioner revised the regulations pertaining to the evaluation of mental disorders:

> [For purposes of applying Listing 12.05C] we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function . . . ."

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00A; Markle v. Barnhart, 324 F.3d 182, 188 (3rd Cir. 2003) (discussing the revised regulations); see also Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000).

**4.     Plaintiff's IQ Test Results.**

In this case, Plaintiff was examined by two consultative clinical

---

[6] The Ninth Circuit has held that "[a]n impairment . . . may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)).

9

1  psychologists, Charlene K. Krieg, Ph.D., and Kim Goldman, Psy.D.  On February
2  26, 2009, Dr. Krieg found that Plaintiff's WAIS-III scores suggested she was in
3  the mildly mentally retarded to borderline range of intelligence.[7] (AR at 13, 172-
4  77.)  Dr. Krieg noted that Plaintiff's "attitude was one of disinterest in the tasks at
5  hand" and that Plaintiff was "moderately to minimally cooperative and did not
6  appear to be putting forth her best effort." (Id. at 172-73.)  Dr. Krieg also noted
7  "qualitative discrepancies in [Plaintiff's] performance . . . in that she performed
8  better on the more difficult Trail B items." (Id. at 176.)  She also noted that
9  Plaintiff's scores on the Test of Malingered Memory ("TOMM") were "in the very
10 probable range for malingering, which *raises the question* of a conscious or
11 unconscious effort to feign impairment, i.e., fake bad." (Id. at 176 (emphasis
12 added).)  Dr. Krieg then made the following suppositions:

> *If* her test performance was not a valid indicator of her current level of functioning, she would be able to manage benefits on her own . . . . [¶] The claimant's current level of intellectual functioning is in the mild mental retarded range. . . . *If* she was not putting forth her best effort, *it is conceivable* that her performance could be higher. [¶] *If* her test performance is not a valid indicator of her current level of functioning, *she would be capable of* understanding clear instructions, following simple directions, and completing tasks. *She would be able to* sustain performance on detailed and complex tasks. *She would be able to* accept instructions from supervisors and interact with coworkers and the public. *She would be able to* maintain a regular attendance in the workplace. *She would not need* special or additional supervision on

---

[7] On the WAIS-III Plaintiff scored a Verbal IQ of 75 (borderline range), a Performance IQ of 59 (mild mental retarded range), and a Full Scale IQ of 65 (mild mental retarded range). (AR at 175.)  If valid, the scores of 59 and 65 both satisfy the first prong of Listing 12.05C.

>work activities. [¶] *If* her test performance is not a valid indicator of her current level of functioning, *there is no impairment* that would interfere with her ability to complete a normal workday or workweek. *She would be able to* deal with the usual stress that may be encountered in competitive work and adjust to changes. *She would not create* a hazard in the workplace. *She would be capable of* performing simple, repetitive work tasks.[8]

(Id. at 176-77 (emphasis added).)

Similarly, on July 1, 2009, Dr. Goldman found that Plaintiff was only "superficially cooperative throughout the evaluation" and "did not make an adequate effort on the tasks presented to her." (Id. at 226.) Dr. Goldman found that Plaintiff was "allegedly unable to correctly state her age or date of birth, and "appeared to volitionally present herself with a severely deficient fund [of information]" and was "allegedly unable to correctly state the shape of a ball." (Id.) Dr. Goldman aborted the Wechsler Memory test "due to [Plaintiff's] uncooperative stance," also noting that Plaintiff "was allegedly unable to read all

---

[8] That's a lot of "ifs." In fact, even assuming the test results were not entirely valid, neither Dr. Krieg nor the record as it exists provide any indication that Plaintiff's current level of intellectual functioning is such that she can manage benefits on her own; understand clear instructions, follow simple directions and complete tasks; sustain performance on detailed and complex tasks; accept instructions from supervisors and interact with coworkers and the public; maintain regular attendance; would *not* need special or additional supervision on work activities; or would not create a hazard in the workplace. (Compare AR at 176-77.) Throughout her schooling, Plaintiff *has* required assistance from the special education staff to complete many tasks. (See, e.g., id. at 157.) In short, this consultative examiner's opinions that if the test scores were not a valid indicator of current level of functioning Plaintiff would be capable of any of these things, are unfounded and speculative.

the letters of the alphabet . . . [or] to spell any words " and reported that 1+1=3."[9] (Id. at 227.) After administering the TOMM, Dr. Goldman concluded that "[Plaintiff] is attempting to simulate cognitive impairment." (Id.) Dr. Goldman found the test results "are not valid," offered no opinion as to whether Plaintiff's impairments met any listing, and deferred a diagnosis due to Plaintiff's apparent lack of effort. (Id. at 227-28.) While Dr. Goldman's findings might provide support for a finding of malingering, her findings and opinion do not provide substantial evidence that even if she had put forth more effort, Plaintiff's IQ scores would *not* fall in the 60-70 range.

Here, relying on the findings of Dr. Krieg and Dr. Goldman, the ALJ concluded:

> The claimant did not cooperate in taking standardized psychometric tests so her IQ scores are unknown. [¶] In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Again, due to lack of effort on the claimant's part, no valid IQ scores could be obtained.

(Id. at 11.) She also noted that the TOMM scores indicated Plaintiff "was probably malingering and attempting to feign a psychological impairment." (Id. at 11, 13.)

In an unpublished decision, the Ninth Circuit has stated that it "do[es] not doubt" that an ALJ can decide that an IQ score is invalid, but also noted that it has

---

[9] Dr. Goldman had reviewed Plaintiff's medical records and noted that Plaintiff's school records described her as "able to read and comprehend most classroom texts with assistance; able to write simple sentences, summaries, short answers, short paragraphs, letters [*with special education assistance*]; research articles with [*special education*] assistance and able to communicate most basic math facts." (AR at 226 (brackets and emphasis added).)

"never decided what information is appropriately looked to in deciding validity of an IQ score." Thresher v. Astrue, 283 Fed. App'x 473, 475 (9th Cir. 2008). That court also recognized that some courts have said that a score can be questioned on the basis of "other evidence," and that other courts require "some empirical link between the evidence and the score." Id. at 495 n.6 (citations omitted). Consequently, some circuits have allowed the ALJ to use several factors in assessing the validity of test results. Clay v. Barnhart, 417 F.3d 922, 929 (8th Cir. 2005) (holding that the ALJ is free to disregard a low IQ score where the evidence showed substantial malingering and daily activities inconsistent with the level of impairment alleged); Soto v. Sec'y, 795 F.2d 219, 222 (1st Cir. 1986) (holding that the ALJ need not accept the IQ score if there is a substantial basis for believing that plaintiff is feigning results). Other circuits have allowed an ALJ to discredit a test result when inconsistencies between tests indicated a high possibility of malingering. Burchfield v. Astrue, No. CV 11-00590-PHX-FJM, 2011 WL 5975764, at *4 (D. Ariz. Nov. 30, 2011) (evidence that claimant did not make a serious effort in testing may properly be considered when determining validity of an IQ score); Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir. 1986).

     Plaintiff complains, without factual or legal support, that the psychological examiners "failed to properly explain the requirements and expectations of multiple complex tests," and that they failed to "take extra time and put forth more effort than with a normal patient to properly and adequately explain the nature and expectations of these types of tests." (JS at 10.) She concludes that if she appeared "disinterested or did not put forth her best effort," it was not a volitional effort by Plaintiff to deceive, "but rather a failure on the part of the test administrator to convey the need for full effort and the expectations of such tests, so that this mentally retarded girl would understand better her need to try hard." (Id.) There is no evidence in the record that these statements are anything more

than self-serving or speculative.[10]  Indeed, the regulations require examining opinions to come "only from a qualified medical source," and require such examiners to be "currently licensed in the State and have the training and experience to perform the type of examination or test" requested.  20 C.F.R. § 416.919g(a)-(b).  Plaintiff does not contend that these examiners were not qualified medical sources.

However, as discussed, Dr. Goldman's results do not constitute substantial evidence of Plaintiff's level of mental impairment, and Dr. Krieg's comments regarding Plaintiff's potential malingering and current level of functioning are equivocal at best.  The Court notes that Dr. Krieg never explicitly found that Plaintiff *was* malingering and, if she was not, then her IQ scores fall squarely within the first prong of Listing 12.05C.  (See supra note 4.)  Moreover, there is ample "other evidence" in the record in the form of Plaintiff's educational records, that should be considered in conjunction with valid IQ scores, if any are obtained, in order to determine whether a finding of "subaverage general intellectual functioning" is warranted.  See Gomez, 695 F. Supp. 2d at 1058 n.5.  However, other than noting that Plaintiff's school records "indicated that [she] was in Special Education because of specific learning disorder in mathematics, reading comprehension, and written language," and that Plaintiff "received a certificate of completion from high school rather than a regular diploma," the ALJ did not address these school records and their relationship, if any, to Plaintiff's level of intellectual functioning.[11]

Finally, notwithstanding her finding that Dr. Krieg's IQ scores were not

---

[10]  On remand, if the ALJ determines that another psychological evaluation is warranted, she could request that the evaluator document whether such instructions were given.

[11]  On remand, the ALJ should consider Plaintiff's school records and determine the weight to give them.

valid, the ALJ nevertheless made the determination at Step Two that Plaintiff has the severe impairment of "mental retardation." (AR at 10.) "In general an IQ of 70 or below indicates mental retardation; . . . an IQ of 70-85 signifies borderline intellectual functioning." Brown v. Sec'y of Health & Human Servs., 948 F.2d 268, 270 (6th Cir. 1991); Gomez, 695 F. Supp. 2d at 1053 n.2. Accordingly, the ALJ's finding of the severe impairment of "mental retardation" appears to be at odds with her conclusion that Dr. Krieg's assessed IQ scores were not valid or that Plaintiff does not meet the first prong of Listing 12.05C.[12]

### 5. Additional Significant Physical Limitations.

The second prong of Listing 12.05C requires that Plaintiff also have "an additional significant physical or mental functional limitation." In this respect, Plaintiff contends that the ALJ should have considered the opinions of State agency physician J. Ross, M.D. (JS at 13-14 (citing AR at 229-34.) Specifically, she contends the ALJ should have considered Dr. Ross' opinions that Plaintiff was limited to lifting only ten to twenty pounds, and standing/walking only short durations/distances up to three to four hours out of an eight-hour workday. (Id. at 13 (citing AR at 230).) She also contends the ALJ also failed to state why she apparently rejected Dr. Ross' preclusions from even moderate exposure to pulmonary irritants, and his total preclusion from all hazards. (Id. (citing AR at 232).) Instead, the ALJ gave "considerable weight" to the opinion of consulting orthopedist, John Simmonds, M.D., without mentioning Dr. Ross. (AR at 13.)

Preliminarily, the opinion of an examining physician such as Dr. Simmonds, is entitled to greater weight because he has had the opportunity to observe the

---

[12] The Court notes that Listing 12.05 itself "does not require a diagnosis or finding of 'mental retardation,' but relies instead on valid IQs in conjunction with other evidence to establish 'subaverage general intellectual functioning.'" Gomez, 695 F. Supp. 2d at 1057-58 (citations omitted). Plaintiff's educational records would constitute "other evidence."

patient and assess the patient's impairments. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a reviewing physician, such as Dr. Ross, who has never examined the claimant, is not usually entitled to great weight. 20 C.F.R. § 404.1527(d). The ALJ may only give greater weight to a non-examining physician's opinion when there is significant evidence in the record which supports that opinion. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). In this case, the ALJ implicitly discounted Dr. Ross' opinion – an opinion that was inconsistent internally and, although professing to be based on Dr. Simmonds' findings, also inconsistent with those findings. Because Dr. Simmonds' opinion rests on his own independent examination of Plaintiff, his "opinion alone constitutes substantial evidence." Tonapetyan, 242 F.3d at 1149.

Generally, however, while "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ] may not ignore these opinions and must explain the weight given to the opinions in their decisions." Soc. Sec. Ruling 96-6p; see also 20 C.F.R. §§ 404.1527(f) (2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . . ."); Sawyer v. Astrue, 303 Fed. App'x 453, 455 (9th Cir. 2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions."). Moreover, although the ALJ has the authority to resolve discrepancies, the ALJ's decision may only stand when there is enough evidence such that a reasonable mind would reach the same conclusion. Magallanes, 881 F. 2d at 750. The Court does not find this to be the case.

In this case, Dr. Ross reviewed Plaintiff's medical records and stated that he

agreed with the opinion of consultative examiner Dr. Simmonds, and that Dr. Simmonds' opinion "forms [the] basis" of Dr. Ross' RFC. (AR at 233.) However, in contrast to Dr. Simmonds' finding that Plaintiff could do a range of medium work, Dr. Ross actually appears to conclude that Plaintiff could perform only a range of light work. (Compare id. with id. at 230.) Specifically, Dr. Ross found Plaintiff could lift and/or carry twenty pounds occasionally, ten pounds frequently; could stand and/or walk at least two hours in an eight-hour workday; could sit for about six hours in an eight-hour workday; and was limited in pushing or pulling with her right lower extremity. (Id. at 230.) Dr. Ross also indicated in his RFC assessment that Plaintiff could climb ramps/stairs, balance, kneel, crouch, and crawl occasionally, and could never climb ladders/ropes/scaffolds. (Id. at 231.) He indicated that Plaintiff should avoid concentrated exposure to extreme heat and cold, wetness, and humidity; should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and should avoid all exposure to hazards such as machinery and heights). (Id. at 232.)

Dr. Simmonds did not review any of Plaintiff's medical records, instead relying on information he obtained through his interview with Plaintiff regarding her medical history and his own radiographic examination. (Id. at 220.) Dr. Simmonds indicated that Plaintiff walked with a right antalgic gait but "appeared to be in no apparent distress and she was able to move freely in and out of the office and about the examination room." (Id. at 13.) Dr. Simmonds opined that Plaintiff could perform a range of *medium* work, lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently, could stand and/or walk *four* hours in an eight-hour workday, did not have any sitting limitations, and could occasionally climb ladders. (Id. at 223.) Dr. Simmonds did not address pushing or pulling with the right lower extremity, environmental limitations, or exposure to hazards. The ALJ gave "considerable weight" to Dr. Simmonds' opinion, and her RFC finding is generally consistent with Dr. Simmonds'

1 opinions.

2     The Court finds that the ALJ's failure to mention the opinion of Dr. Ross,
3 indicate the weight given to it, or consider and resolve the apparent discrepancies
4 between that report and Dr. Simmonds' report constitutes legal error.[13]

5     Not only did the ALJ fail to mention Dr. Ross' report, at Step Two she also
6 made the finding that Plaintiff has the additional severe physical impairments of
7 post-traumatic orthopedic changes of the hip and hip dysplasia. (Id. at 10.) As
8 such, based on the ALJ's own findings, it appears that under both the Ninth
9 Circuit law of Fanning and the Commissioner's newer, more demanding
10 regulatory standard, Plaintiff has "a physical or other mental impairment imposing
11 an additional and significant work-related limitation of function," distinct from her
12 IQ score, within the meaning of the second prong of Listing 12.05C. See Fanning,
13 827 F.2d at 633 n.3. To the extent, therefore, that the ALJ also concluded that
14 Plaintiff does not have a physical impairment imposing an additional significant
15 work-related limitation of function, as required by the second prong of Listing
16 12.05C, that conclusion is inconsistent with her Step Two findings.

17 **D.**     **This Case Should Be Remanded for Further Administrative**
18         **Proceedings.**

19     For all of the foregoing reasons, the ALJ's Step Three finding that Plaintiff
20 did not meet or equal a listed impairment was not based on substantial evidence
21 and is not free of legal error. The law is well established that remand for further
22 proceedings is appropriate where additional proceedings could remedy defects in
23 the Commissioner's decision. Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir.
24 1984). The Court finds that in this case, remand is warranted to address the
25 deficiencies addressed in this Opinion. See Jackson v. Astrue, No. CV 08-1623
26 JC, 2008 WL 5210668, at * 5 (C.D. Cal. Dec. 11, 2008) (remand necessary where

---

28     [13] On remand, the ALJ might obtain clarification from Dr. Ross regarding his opinions.

"the ALJ failed to resolve the apparent inconsistency between his finding that plaintiff's depression was severe and his finding that plaintiff did not have any other mental impairment that would impose an additional and significant work-related limitation" according to Listing 12.05C).

## IV.
## **ORDER**

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: February 21, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge